**CLARKSON LAW FIRM, P.C.**
Glenn A. Danas (SBN 270317)
*gdanas@clarksonlawfirm.com*
Maksim Gorbunov (SBN 343128)
*mgorbunov@clarksonlawfirm.com*
Cody Laux (SBN 359748)
*claux@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050

*Attorneys for Plaintiff and Putative Class*
*[Additional Counsel on Following Page]*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

RACHEL KREIFELS and ASHLEY MARIN, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

MONAT GLOBAL CORP., RAYNER URDANETA, LUIS URDANETA, LU URDANETA, FRANCISCO JAVIER URDANETA, MARJORIE MUNOZ, CARLA HERNANDEZ, and DOES 1–50, inclusive,

Defendants.

Case No. 8:25-cv-01160-FWS-AJR

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

1) Failure to Pay Minimum Wage and Liquidated Damages (Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001);
2) Failure to Pay Overtime Wages and Liquidated Damages (Cal. Lab. Code §§ 510, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001);
3) Failure to Provide Rest Periods or Rest Break Premium Wages (Cal. Lab. Code §§ 226.7, 558.1; IWC Wage Order 4-2001);
4) Failure to Provide Meal Periods or Meal Premium Wages (Cal. Lab. Code §§ 226.7 512(a), 1198, 558.1; IWC Wage Order 4-2001);
5) Failure to Timely Pay Wages During Employment (Cal. Lab. Code §§ 204, 210(a), 218.6);
6) Failure to Keep Requisite Payroll Records (Cal. Lab. Code §§ 1174(d), 1174.5);
7) Failure to Provide Timely and Accurate Wage Statements (Cal. Lab. Code §§ 226(a), 1198, 226.3, 558.1, 226(e));
8) Failure to Reimburse Business Expenses (Cal. Lab. Code §§ 450, 2802, 558.1; IWC Wage Order 4-2001);
9) Unfair Competition (Bus. & Prof. Code § 17200 et seq; and
10) Violations of the Private Attorney General Act (Labor Code §§ 2698-2699.8)

**JURY TRIAL DEMANDED**

**CLARKSON LAW FIRM, P.C.**
Kristen G. Simplicio (SBN 263291)
*ksimplicio@clarksonlawfirm.com*
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Telephone: (202) 998-2299

*Attorneys for Plaintiff and Putative Class*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ........ 1

II. JURISDICTION AND VENUE ........ 5

III. THE PARTIES ........ 6

IV. FACTS COMMON TO ALL CLASS MEMBERS AND AGGRIEVED EMPLOYEES ........ 9

A. Monat Is a Successful Multilevel Marketing Company That Is Dependent on Its Market Partners to Engage in Social Media Marketing on Its Behalf. ........ 9

B. Monat Market Partners Are Employees ........ 10

1. Controlling Law ........ 10

2. Market Partners Are Not Free from Monat's Control. ........ 13

3. Market Partners' Work Is Not Outside Monat's "Usual Course of Business." ........ 14

4. Monat Cannot Meet Its Burden to Show That Market Partners Are "Customarily Engaged" in a Separate Business. ........ 15

5. Monat Market Partners Are Not "Direct Sellers." ........ 16

a. Background on MLMs and the Direct Sales Exemption ........ 16

b. Monat Market Partners Do Not Perform the Jobs Identified in the Direct Sales Exemption ........ 17

c. Monat Market Partners Are Not Engaged Primarily in In-Person Consumer Sales Work ........ 18

d. Monat Market Partners Are Not Engaged in Wholesale/Resale Work. ........ 18

e. The Job Descriptions In the Direct Sales Exemption Predate Significant Changes to How MLMs Now Operate. ........ 20

f. Monat's Modern E-Commerce Business Is Unlike Past and Present Direct Sales Companies. ........ 21

6. The Terms and Conditions in Monat's Policies are Unconscionable, Unfair, and Unlawful. ........ 23

C. Monat's Misclassification of Plaintiffs and Market Partners Was Willful. ....24

D. Monat's Misclassification of Market Partners and Unfair Business Practices Harm the California Public. ....26

1. Monat Uses Widespread Advertising Practices Directed at the General Public to Recruit New Market Partners ....26

2. Monat's Unfair and Unlawful Conduct Harms California in Other Ways. ....28

E. Plaintiffs' Experiences as Monat Market Partners....30

1. Plaintiff Rachel Kreifels ....30

2. Plaintiff Ashley Marin ....32

V. CLASS ALLEGATIONS ....34

VI. FACTS RELATING TO PLAINTIFF AS A PRIVATE ATTORNEY GENERAL....36

VII. CAUSES OF ACTION....38

FIRST CAUSE OF ACTION....38

SECOND CAUSE OF ACTION ....40

THIRD CAUSE OF ACTION ....41

FOURTH CAUSE OF ACTION ....43

FIFTH CAUSE OF ACTION ....44

SIXTH CAUSE OF ACTION....45

SEVENTH CAUSE OF ACTION ....46

EIGHTH CAUSE OF ACTION....48

NINTH CAUSE OF ACTION....50

Violation of the Unlawful Prong of the Unfair Competition Law....50

Violation of the "Unfair" Prong of the Unfair Competition Law....51

VIII. PRAYER FOR RELIEF ....54

IX. DEMAND FOR TRIAL BY JURY ....55

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiffs Rachel Kreifels and Ashley Marin bring this action, individually, and on behalf of a class of similarly situated individuals, against MONAT GLOBAL CORP., RAYNER URDANETA; LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, (collectively, "Defendants" or "Monat"). Plaintiffs' allegations against Defendants are based upon an investigation carried out by Plaintiffs' counsel, except for allegations pertaining specifically to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## I. INTRODUCTION

1. Monat is a massively successful company that, for years, has exploited its California salesforce by misclassifying its workers as independent contractors rather than as employees. Plaintiffs are Monat "Market Partners," two of the over 100,000[1] active sales workers in the United States who sell Monat products through their online networks under Monat's strict direction and control. In exchange for Market Partners' work promoting the brand on social media, acquiring new customers, engaging existing customers, providing customer service, recruiting and training new Market Partners, and driving traffic to Monat's website, Monat pays them, at most, a paltry commission.

2. Headquartered in Florida, Monat develops and sells a wide range of "naturally based, anti-aging haircare, skincare, and wellness innovations".[2] Pursuant to Monat's business model, it establishes relationships with various individuals known as "Market Partners" who sell Monat products. Monat has spent a great deal of time and resources in implementing and managing a broad range of employment policies and procedures for these Market Partners. Despite these Market Partners serving as its salesforce, Monat designates them as independent contractors. However, these Market

---

[1] Monat had 108,978 Market Partners as of December 31, 2023. *MONAT USA 2023 and 2024* Income Disclosure Statement*, MONAT, https://monatglobal.com/income-disclosure-statement/ (last visited Feb. 27, 2025).

[2] *Our Vision*, MONAT GLOBAL, https://monatglobal.com/ (last visited April 15, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Partners are in fact employees under California law. Monat has violated numerous provisions of the California Labor Code and applicable IWC Wage Order by denying its Market Partners the compensation, other benefits, and statutory entitlements that they are owed as employees.

3. Monat maintains a centralized, rigorous, and stringent sales policy to which each of its Market Partners must rigidly adhere should they expect any commission for their sales of Monat products. Even when these Market Partners do follow Monat's exact direction to the tee, the majority of Market Partners fail to even break, having sunk substantial time and personal investment into marketing Monat products. Despite this dedication, Monat refuses to compensate and reimburse its Market Partners for their time and expenses.

4. Via its pervasive marketing and sales guidelines, Monat directed its Market Partners to market and sell a variety of beauty and personal care products. In exchange for their work promoting the brand on social media, referring new customers, providing customer service, and driving traffic to Monat's website, Monat only pays these Market Partners' commission.

5. Monat's ability to avoid accountability to its employees thus far—turns on the fact that it operates as multi-level marketing business ("MLM"). [3] Monat's recruitment tactics promise its Market Partners the opportunity to build a rewarding business; in reality, however, they supply free marketing and sales support for Monat.

6. Monat products and services are sold through Monat's network of Market Partners. Online shopping is fulfilled and sold directly by Monat through a portal log-in portal that Market Partners use which connects directly to the Monat store website.

7. California legislature's codification of the "ABC Test" in AB 5 did include a "direct sales" exemption, which incorporated a definition appearing in a 40-year-old

[3] Gerald Albaum & Robert A. Peterson, *Multilevel (Network) Marketing: An Objective View*. 11 MARKETING R. 347, 347–61 (2011).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

statute, California's Unemployment Code § 610. Among other things, the exemption is expressly limited only to those salespersons making "in person" sales, such as door-to-door salespeople and home "Tupperware party" hosts. It does not cover Monat's modern, online business model, where Market Partners drive social media engagement under Monat's guidance and direction, directing consumers to Monat-controlled websites, where Monat accepts and processes the sales and fulfills the orders, while also collecting and benefiting from the consumer data it acquires from these leads. The result is a coordinated marketing campaign that increases exposure and awareness of the Monat products and is essential to the company's ability to reach new customers.

8. Monat strictly controls the work product of its Market Partners, in part by ensuring that they follow its rigid policies and practices including precluding its Market Partners from marketing with any other MLM company. If a Market Partner sells products of other MLM companies, Monat can shut down their account, preventing them from earning commission from Monat sales. Monat also controls what products its Market Partners can market, the prices at which these products are sold, and the pictures and product descriptions that customers will encounter when purchasing the product through a Market Partner's "Replicated Website."

9. "Replicated Websites" are Monat-created and controlled website links that Monat assigns to its Market Partners. These Replicated Websites display the same Monat website as normally shown but notes which Market Partner the purchaser is "shopping" with. Market Partners cannot edit the content, text, photos, prices, or any aspect of the Replicated Website, which only serves to give them credit for sales.

10. Because Monat classifies its Market Partners as independent contractors, it does not provide them any protections or rights that employees are entitled to under California and Federal law, such as minimum wage for all time worked, compliant meal and rest breaks, or overtime pay.

11. Monat also fails to reimburse the hefty business expenses it directs its Market Partners to incur and provides no method of seeking reimbursement of these

business expenses. Market Partners must absorb all costs related to their work with Monat, regardless of how much benefit Monat received from these expenses. For example, Market Partners must purchase products directly from Monat using their own money to market and pay for other costs, such as internet and electricity to advertise these products on social media. In fact, Monat specifically *requires* Market Partners to purchase a Product Pack from Monat's website in order to open a Market Partner account. These Product Packs range from $99 to $649, with $99 being the price for a Starter Kit, $299 for a Business Product Pack, $399 for a Success Product Pack, and a whopping $649 for the Overachiever Product Pack. These Packs include the "registration fee", as well as marketing material such as SMART Start Roadmap, SMART Start Workbook, and VIP Booklet.[4] Finally, depending on the price the Market Partner pays, the Product Pack contains a range of products. While the $99 Starter Kit only includes assorted samples, the higher value Packs include actual product bottles, with the number of products increasing along with the Pack price. Market Partners are incentivized to purchase the more expensive Product Packs to have an advantage in marketing their products over other Market Partners because they receive more of the actual products that they can use as part of their social media advertising.

12. Plaintiffs Rachel Kreifels and Ashley Marin were subject to these practices. Like all Market Partners, in accordance with Monat's strict marketing and sales protocols, Plaintiffs were trained by other Market Partners using Monat materials and were required to market products to the public in accordance with Monat's instructions and parameters. In return, Plaintiffs were paid virtually nothing while incurring unreimbursed personal costs to perform the work on Monat's behalf.

13. For these reasons, Plaintiffs bring this action to recover unpaid wages, overtime compensation, penalties, interest, injunctive relief, other equitable remedies,

[4] *See Product Packs: Developed to Help You Build Your Business*, Monat Global, https://monatglobal.com/wp-content/uploads/2018/05/Updated-Product-Packs_May-2018.pdf (last visited Feb. 5, 2025).

damages, and reasonable attorneys' fees and costs under the California Labor Code, Cal. Lab. Code §§ 204, 226(a), 226.7, 226.8, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802 and 2698 *et seq*., IWC Wage Order 4-2001 (8 Cal. Code Regs. § 11040), and California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq*.). Plaintiffs also allege civil penalties under the Private Attorneys General Act ("PAGA"). In addition, Monat's conduct violates various municipal and county codes in California, including but not limited to City of Los Angeles Municipal Code Art. 7; County of Los Angeles Code § 8.100.040, *et seq*., San Francisco Cal. Code 12R.

14. Upon information and belief, Monat has not addressed and/or changed its unlawful practices including failing to provide complaint meal and rest periods and has continued to deprive employees of money owed to them in straight and overtime compensation. By bringing this action, Plaintiffs intend to stop this ongoing and unlawful practice and recover back wages and overtime to which they are rightfully entitled.

## II. JURISDICTION AND VENUE

15. The monetary damages, civil penalties, restitution, and equitable relief sought by Plaintiffs, the class members, and other aggrieved employees exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

16. This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10. The statutes under which this action is brought do not specify any other basis for jurisdiction.

17. This Court has jurisdiction over all Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice. Moreover, the acts and omissions

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

detailed herein occurred in California.

18. Venue is proper in this Court because Plaintiffs Rachel Kreifels and Ashley Marin performed work for Defendants from their respective homes in Clovis, located within Fresno County, California, and Anaheim, located in Orange County, California. Defendants' acts and omissions in violation of the relevant labor statutes are thus physically tied to Plaintiffs' residential addresses.

19. Upon information and belief, Defendants direct and control a large workforce of Market Partners throughout Orange County, California—and have agents, employ individuals, and/or transact business in the State of California, County of Orange.

## III. THE PARTIES

20. Plaintiff Rachel Kreifels is an individual and resident of Fresno County, California.

21. Plaintiff Ashley Marin is an individual and resident of Orange County, California.

22. Monat Global Corp. is an entity incorporated under the laws of the State of Florida, with principal places of business in Doral, Florida. Monat directly, and/or through its alter egos, owns and controls numerous brands and product lines, including vegan bath, body, skincare items, cosmetics, and nutrition products.

23. Plaintiffs are informed and believe and based thereon allege that RAYNER URDANETA is, and at all times relevant hereto was, an individual residing in Florida, as well as Co-Founder and Chief Executive Officer for Monat. Plaintiffs are further informed and believe and based thereon allege that RAYNER URDANETA, in his capacity as the Co-Founder and Chief Executive Officer of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

sections 558.1, 1197.1 and the IWC Wage Orders.

24. Plaintiffs are informed and believe and based thereon allege that LUIS URDANETA is, and at all times relevant hereto was, an individual residing in Florida, as well as Co-Founder and Chairperson for Monat. Plaintiffs are further informed and believe and based thereon allege that LUIS URDANETA, in his capacity as the Co-founder and Chairperson of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code sections 558.1, 1197.1 and the IWC Wage Orders.

25. Plaintiffs are informed and believe and based thereon allege that LU URDANETA is, and at all times relevant hereto was, an individual residing in Florida, as well as Chief Culture Officer for Monat. Plaintiffs are further informed and believe and based thereon allege that LU URDANETA, in his capacity as the Chief Culture Officer of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code sections 558.1, 1197.1 and the IWC Wage Orders.

26. Plaintiffs are informed and believe and based thereon allege that FRANCISCO JAVIER URDANETA is, and at all times relevant hereto was, an individual residing in Florida, as well as Chief of Staff for Monat. Plaintiffs are further informed and believe and based thereon allege that FRANCISCO JAVIER URDANETA, in his capacity as the Chief of Staff of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-

referenced Labor Code provisions in violation of Labor Code sections 558.1, 1197.1 and the IWC Wage Orders.

27. Plaintiffs are informed and believe and based thereon allege that MARJORIE MUNOZ is, and at all times relevant hereto was, an individual residing in Florida, as well as Chief Financial Officer for Monat. Plaintiffs are further informed and believe and based thereon allege that MARJORIE MUNOZ, in her capacity as the Chief Financial Officer of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code sections 558.1, 1197.1 and the IWC Wage Orders.

28. Plaintiffs are informed and believe and based thereon allege that CARLA HERNANDEZ is, and at all times relevant hereto was, an individual residing in Florida, as well as Vice President, Global Marketing for Monat. Plaintiffs are further informed and believe and based thereon allege that CARLA HERNANDEZ, in her capacity as the Vice President, Global Marketing of Monat, exercised control over the wages, hours and/or working conditions of Plaintiffs and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code sections 558.1, 1197.1 and the IWC Wage Orders.

29. The true names and capacities of Defendants sued as DOES 1–50, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. Plaintiffs will seek leave to amend this Demand when said true names and capacities have been ascertained.

//

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## IV. FACTS COMMON TO ALL CLASS MEMBERS AND AGGRIEVED EMPLOYEES

### A. Monat Is a Successful Multilevel Marketing Company That Is Dependent on Its Market Partners to Engage in Social Media Marketing on Its Behalf.

30. Monat is a massively successful multi-level (network) marketing company that serves the US market with its portfolio of hair care products.

31. Monat sells its products through an army of Market Partners – sellers who market Monat's products primarily through social media. Market Partners are not paid on an hourly basis, instead they are compensated through commissions. Market Partners start at a low rank, severely limiting their commissions. To rise in rank, the Market Partners must not only have selling requirements, but must also recruit sellers "Downline"[5] from them, meaning other sellers who are positioned and are selling under the Market Partner's name, who in turn, must recruit sellers under *them*, effectively making a pyramid shaped Market Partner structure, with a few people making lots of money at the top, while few making any profit at all downstream.

32. Market Partners do not sell through their own means or their own business. Instead, they convince others to buy through Monat's website using the Market Partner's ID number to act as a referral—the "Replicated Website." Monat requires Market Partners to sell exclusively for Monat and does not allow Market Partners to sell for other MLM companies.

33. Despite the pivotal role of its salesforce, Monat has never properly

---

[5] The "upline" and downline" concepts are the hallmark of the MLM structure. To illustrate, when an established Market Partner, whom we will call "Amy," recruits a friend, whom we will call "Bill," to be a Market Partner, Bill is in Amy's downline; and Amy is in Bill's upline. If Bill in turn recruits a new Market Partner, whom we will call "Chris," then Bill has an upline (to Amy) and a downline (to Chris); the established Market Partner Amy now has two levels to her downline, to Bill (first level), and Chris (second level). Should Chris then recruit someone, the established Market Partner Amy would have three levels to her downline.

classified Market Partners as employees. Rather, Monat adheres to a multi-level (network) marketing organization structure, in which it offers people the purported opportunity to develop their own business earning commission by selling Monat products and recruiting others to do the same, designating them as independent contractors.

34. However, these Market Partners are not independent contractors under applicable law. Monat instead chose to unlawfully secure an expansive marketing and sales network for minimal to no cost. It has reaped enormous profits by deliberately avoiding paying wages and benefits to those performing the sales work that forms the backbone of Monat's business. Monat charges its Market Partners for access to the instrumentalities needed to sell products, further increasing its profits and decreasing Market Partners' pay, in violation of California law. The intended result is for Market Partners to receive, at most, de minimis profit from their work, while providing free labor and shouldering the costs of doing business that Monat should be bearing.

## B. Monat Market Partners Are Employees

### 1. Controlling Law

35. Companies like Monat were never supposed to be allowed to run an entire business on the backs of independent contractors. People who work in a company's core line of business are its "employees." *United States v. Silk*, 331 U.S. 704, 718 (1947).

36. Monat claims an unprecedented portion of its workforce as "independent contractors." Monat relies on a network of more than 100,000 Market Partners across the United States, to act as marketers, sales representatives, and distributors for its products.[6] On LinkedIn, Monat states that it currently employs between 501 and 1000 "employees."[7] Thus, for years Monat has claimed over 99% of its workforce as

---

[6] Monat had 108,978 Market Partners as of December 31, 2023. *MONAT USA 2023 and 2024* Income Disclosure Statement*, MONAT, https://monatglobal.com/income-disclosure-statement/ (last visited Feb. 27, 2025).

[7] MONAT Global: About, LINKEDIN, https://www.linkedin.com/company/monat-

"independent contractors."

37. Monat employees perform a variety of roles: some work as accountants or in IT or marketing, others as researchers and product developers. These workers receive special treatment from Monat, including benefits such as health insurance and paid leave.

38. But the Market Partners, who make up the bulk of Monat's workforce, are denied even the most basic protections of federal and state labor laws. Monat does not pay them minimum wage; it does not pay overtime; and it does not reimburse business expenses, such as internet connections, laptops, smart phones, or post promotion over Facebook, YouTube, and Instagram. Its classification of its Market Partners also deprives them of basic protections against discrimination and sexual harassment.

39. By design, "independent contractors" are exempted from "nearly every" labor law, but this classification was not meant to be a loophole for companies like Monat, whose Market Partners are effectively modern day telemarketers.[8] "Historically, firms reserved the independent contractor designation for entrepreneurial individuals whose skills demanded higher pay in the open market."[9] With this in mind, "[l]egislatures rationalized excluding [independent contractors] from most employment laws because these individuals did not require the same legal protections as potentially more vulnerable, less-skilled 'employees.'"[10]

40. Despite being a $40 billion industry, "the vast majority of people involved in them don't make money off of MLMs, and many people lose money."[11] Monat's

global-corp/about/ (last visited Feb. 27, 2025).

[8] Keith Cunningham-Parmeter, *From Amazon to Uber: Defining Employment in the Modern Economy*, 96 B.U. L. Rev. 1673, 1683–84 (2016).

[9] *Id.*

[10] *Id.*

[11] Emily Stewart, *$5 Jewelry and an MLM Conference Gone Wrong: Multilevel Marketing Companies were the "Perfect" Pandemic Business*, VOX (Sept. 23, 2021), https://www.vox.com/the-goods/22688317/mlm-covid-19-pandemic-

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Market Partners are no exception: according to Monat's own Income Disclosure Statement, 34% of Market Partners received no commission payment in 2023.[12]

41. MLMs like Monat have grown during the COVID-19 pandemic, recruiting salespeople by promising remote work for the unemployed.[13] These are the precise individuals that legislatures meant to shield with minimum wage and other workplace protections.

42. In recent years, state legislatures have taken action to send a clear message that most workers should be "employees."

43. California has adopted the "ABC test" to determine whether a company, like Monat, has misclassified its workers as "independent contractors." Because employee status was meant to be the default, the ABC test "presumptively considers all workers to be employees and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions:

> A. that the worker is free from the control and direction of the hirer in connection with the performance of the work… ***and***
>
> B. that the worker performs work that is outside the usual course of the hiring entity's business; ***and***

---

recruiting-sales-paparazzi https://monatglobal.com/income-disclosure-statement/(last visited Feb. 27, 2025) (citing study finding that 99 percent of MLM participants lose money).

[12] Monat had 108,978 Market Partners as of December 31, 2023. *MONAT USA 2023 and 2024* Income Disclosure Statement*, MONAT, https://monatglobal.com/income-disclosure-statement/ (last visited Feb. 27, 2025).

[13] Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/https://monatglobal.com/income-disclosure-statement/ (last visited Feb. 27, 2025).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

C. that the worker is customarily engaged in an independently established … business of the same nature as that involved in the work performed."

*Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 956-57 (2018) (emphasis in original).

**2. Market Partners Are Not Free from Monat's Control.**

44. To engage in online marketing work for Monat, the company does not require Market Partners to hold any special experience, skills, license, or education level. Rather, Monat requires only that a prospective Market Partner sign up for an account and purchase a Product Pack, costing $99 to $649, using the Monat website.

45. Market Partners are required to adhere to a series of terms and conditions.

46. Market Partners must adhere to Monat policies and practices. In its policies, Monat gives itself broad rights to control Market Partners and mandate conformance with its directives. For example, Market Partners must sell products exclusively for Monat and no other company.

47. Because Monat treats the Market Partners as independent contractors, it does not pay them any salary, wages, or benefits. Rather, as is typical in the MLM industry, the Monat Compensation Plan provides for two types of compensation: (1) for sales the Market Partner made to consumers, the Market Partner receives a small percentage as a commission, and (2) if the Market Partner builds a "downline," i.e., recruits other new Market Partners to market and sell Monat products, then the "upline" Market Partner receives commissions for sales made by those Market Partners in their downline.

48. Market Partners are responsible for all business expenses, including hundreds of dollars for the mandatory Product Pack purchase when enrolling and a subsequent $49.99 annual fee to remain eligible to earn commission. In addition, Market Partners do not receive products for free but must purchase them from Monat to create promotional posts and testimonials on social media. Monat does not reimburse Market

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

for the purchases, or for the costs of a cell phone, internet, and other routine business expenses.

49. Monat's reliance on an e-commerce platform limits Market Partners' discretion and promotes online sales over in-person interactions. Market Partners' Monat-issued websites, "Replicated Sites," are designed in a way that ensures that Market Partners operate in compliance with Monat's marketing directives as laid out in its policies. Because the Replicated Site is not a standalone website, but a portal by which the public can view the products on Monat's own websites in a way that gives credit to the Market Partner for the sale, the product pages and descriptions are generated entirely and solely by Monat, with no option for the Market Partner to revise or supplement either the language or photos of the products. Thus, the Market Partner is in effect selling the product using only Monat-approved marketing language and intellectual property.

50. Monat sets the prices and does not permit adjustments, nor is there a way for a Market Partner to allow a customer to get a discount, receive a free gift, make a donation, or use any other offer that is not available on Monat's main platforms and to other Monat customers. This significantly limits Market Partners' marketing discretion.

51. Monat requires Market Partners to advertise exclusively with Monat—restricting Market Partners from advertising products of other MLM companies.

### 3. Market Partners' Work Is Not Outside Monat's "Usual Course of Business."

52. Monat views the work of its Market Partners to market the Products online as central to its business model. The primary benefit to Monat from the Market Partners' work is the way in which they drive engagement with the brand and people to Monat's website. Monat gets increased visibility on social media, enabling it to compete in a saturated wellness and personal care market more cheaply. For much the same reason that brands turn to influencers, Monat understands that social media posts from friends

may be more persuasive in driving interest and generating paying customers than a paid advertisement.

53. Market Partners are engaged in the exact work that Monat performs—selling its products on its website. Market Partners market and advertise Monat's products, and direct customers to these products directly from Monat.

**4. Monat Cannot Meet Its Burden to Show That Market Partners Are "Customarily Engaged" in a Separate Business.**

54. Monat cannot meet its burden to show that Market Partners are "customarily engaged" in an independently established sales and marketing business. Instead, most Market Partners are recruited regardless of their skill or experience, only perform sales and marketing for Monat (using Monat's approved platforms), and maintain no separate sales or marketing business.

55. The Market Partners are not required to have any background in hair care or beauty prior to becoming a Market Partners. Market Partners are not required to have any licensure or meet any educational requirements, either. For example, they do not need to be licensed cosmetologists, nor have any schooling, training, or prior employment in fields relating to makeup or skincare. Nor does Monat require that they have schooling, training, or prior employment in marketing, sales, or general business. Instead, Monat only requires that prospective Market Partners complete a short application and purchase a Product Pack. In fact, most Market Partners have little to no prior relevant experience or training.

56. Most Market Partners have never owned or operated their own separate sales business outside of Monat. And most Market Partners do not maintain any registered or incorporated sales or marketing business, for their work with Monat or otherwise. Market Partners generally do not hold themselves out to others as sales or marketing professionals or maintain any office or business address.

57. Ultimately, Monat intends for Market Partners to see Monat as an

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

employer, not as client. In other words, regardless of whether a Market Partner maintains any kind of independent business, Monat's policies and mandated instrumentalities of work make it so the Market Partners responsibilities are not those that are of the sort that would be performed by an independent and trained professional. The expectation is that the Market Partners are using Monat's brand to sell, not their own business's identity. Likewise, Monat's policies promoting sales through the Sites, restrictions on using other websites as a point of sale, and limitations on where the Products can physically be sold effectively prevent Market Partners from integrating the sale of Monat products into any pre-existing business. And Monat prohibits Market Partners from using its platforms to promote other businesses.

58. Further, Monat actively limits Market Partners' ability to engage in sales or marketing opportunities outside Monat. For example, Monat prohibits Market Partners from recruiting other Market Partners to join other MLMs or even to market products from other MLM companies.

**5. Monat Market Partners Are Not "Direct Sellers."**

59. Despite classifying the Market Partners as Independent Contractors, they are employees under California law. As set forth below, while some MLM workers might meet the narrow statutory exemption for those employed in "direct sales," the Market Partners do not.

**a. Background on MLMs and the Direct Sales Exemption.**

60. For many years, the MLM industry has enjoyed notoriety for its ability to carve out loopholes from federal and state employment laws, permitting MLMs to treat its sales personnel as independent contractors. These regulations were enacted in the 1970s and 1980s, and in California, the exemption describes a different job than what Monat Market Partners perform.

61. When AB 5 was passed in 2019, it codified the opinion in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*, 4 Cal. 5th 903 (2018), in which it set forth a new test for misclassification (the "Dynamex Test"). When the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

bill was being debated, many in the MLM industry recognized that the Dynamex Test would require them to classify their workers as employees. The Direct Selling Association ("DSA"), the industry lobbying group, pushed for an exemption. As a result of those efforts, AB 5 exempts from the Dynamex Test any salesperson "described in Section 650 of the Unemployment Insurance Code, so long as the conditions for exclusion from employment under that section are met." ("Direct Sales Exemption") For such workers who fall within the exemption, the old common law test (rather than the ABC test) would govern the question of employee status.

62. For an entity to be covered under the Direct Sales Exemption, the hiring entity must show that the work satisfies all three criteria set forth in the statute, namely that (a) the worker performs one of two specific types of work; (b) the worker's compensation is directly tied to sales or output, and not hours worked; and (c) the worker and business have an agreement that the worker will be treated as a contractor for tax purposes. If all three criteria are not met, then the exemption does not apply, and if the worker otherwise meets the Dynamex Test, they are misclassified. While the third of these criteria—services performed pursuant to a contract identifying the person as an independent contractor—is only facially met, and even if it were an enforceable contract, that factor is not dispositive. As discussed below, the Market Partners' job does not satisfy the other criteria.

**b. Monat Market Partners Do Not Perform the Jobs Identified in the Direct Sales Exemption.**

63. First, for the Direct Sales Exemption to apply, the salesperson must be performing one of two narrowly defined jobs. Specifically, the Exemption requires that one be "engaged in the trade or business of primarily inperson [sic] demonstration and sales presentation of consumer products, including services or other intangibles, in the home or sales to any buyer on a buy-sell basis, a deposit-commission basis, or any similar basis, for resale by the buyer or any other person in the home or otherwise than

from a retail or wholesale establishment." In other words, section (a) of the Direct Sales Exemption is best understood as identifying two specific categories of direct sales jobs, ***Primarily In Person Consumer Sales Work***, and ***Wholesale/Resale Work***, that could trigger the applicability of the Direct Sales Exemptions. The Monat Market Partner does not fall under either of these categories.

**c. Monat Market Partners Are Not Engaged Primarily in In-Person Consumer Sales Work.**

58. This job category covers those who are "engaged in the trade or business of primarily inperson [sic] demonstration and sales presentation of consumer products, including services or other intangibles, in the home." Thus, the exemption is limited to those who are *primarily* selling consumer products *in person* and *in the home*. These terms are significant, as they do not appear in the analogous job category of "direct sellers" under a later federal statute. *See* 26 U.S.C. § 3508(b)(2)(ii). Thus, the California exemption applies narrowly to jobs like door-to-door salespersons, or the direct sellers who work almost exclusively through the home party circuit, i.e., people who sell consumer products by meeting with other consumers in their homes.

59. As discussed throughout, Monat Market Partners do not "primarily" sell "in person." Instead, Market Partners sell through online sources like social media.

60. Moreover, to the extent any Market Partner in the Monat network was primarily conducting "in person" sales after the purported Monat "digitization," the COVID pandemic would have pushed more sales online.

**d. Monat Market Partners Are Not Engaged in Wholesale/Resale Work.**

59. This job category, which also has a federal parallel, 26 U.S.C. § 3508(b)(2)(i), covers those are engaged in:

a) "sales to any buyer"

b) "on a buy-sell basis, a deposit-commission basis, or any similar



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

basis,"

c) "for resale by the buyer or any other person", and

d) "in the home or otherwise than from a retail or wholesale establishment."

While California law does not define the terms buy-sell or deposit-commission in [b], federal law does. The term "buy-sell basis" is one in which one buys the product to sell the product, and gets paid for selling the product with the spread between the purchase price and the resale price, and term "deposit-commission basis" applies where the buyer keeps as commission for a sale of a product the deposit received from the buyer. *See* 26 U.S.C. 6041A(b)(2)(A) & (B).

60. The "Wholesale/Resale Work" is even more narrow than "In Person Home Sales Work," and does not apply to Monat. Rather, Monat requires that Market Partners sell only to themselves or to retail customers.

61. To illustrate what is meant by "Wholesale/Resale Work," a hypothetical upline Market Partner Sue would be performing this work if [a] Sue was selling Products to her downline Market Partner Bob [c] for Bob to resell, not to keep for his own use; and [b] Sue was compensating Bob for his resale services by permitting Bob to keep the difference between the price he paid to Sue and the product's selling price or by permitting Bob to keep the deposit he acquired. Monat Market Partners do not work in this way—selling products to Market Partners for Market Partners to re-sell. If Bob directs a lead to purchase a product from Monat, both he and his upline Market Partner (e.g., Sue) would receive a commission for sales from Monat. But as to Sue, [a] is not met because Sue did not sell the Products to Bob. Because Bob acquired the Products from Monat to sell at retail, not to someone to re-sell, [a] and [c] are not met. As to both, [b] is not met, because neither sold the product on those terms. Rather, Monat takes the full payment at the point of sale and sends the product directly to the consumer, and then separately pays the Market Partners.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**e. The Job Descriptions in the Direct Sales Exemption Predate Significant Changes to How MLMs Now Operate.**

62. By way of background, these two categories of jobs outlined in the Direct Sales Exemption were how MLMs organized at the time the Direct Sales Exemption was enacted. In the 1970s and 1980s, downline sellers hosted parties, traveled door to door, had booths at local fairs, or visited friends and family in their homes to hand out samples, catalogs, and sales sheets. They took orders and payment directly from the customer. Once the seller had enough orders, the seller placed the order with the company, received the shipment from the company, and then met with the customer again in person to deliver the product and if necessary, collect any further payment that might be due. The direct seller engaged with consumers both directly and personally; the consumers had little to no interaction with the company.

63. In some instances, instead of placing the order with the company, the seller performing "In Person Home Sales" would place the order with the person in their "upline," who was engaged in "Wholesale/Resale Work." The upline seller acquired products from the company and sold them to the downline "In Person Home Sales" worker on a buy-sell or commission deposit basis for them to sell to end consumers (or to their downlines). The seller was able to do "Wholesale/Resale Work" because at the time, MLMs permitted direct sellers to fulfill their sales quotas by either selling the product to retail consumers or selling it to downline sellers.

64. Since the Direct Sales Exemption was enacted, various changes in the MLM industry occurred to move away from this model. Most notably is the fact that over the last few decades, MLMs have been forced to make changes to their operations in response to regulatory actions and civil lawsuits by private litigants to enforce anti-pyramid scheme laws. Courts and regulators have made clear that to avoid violating criminal and civil pyramid scheme laws, MLMs needed to conduct operations so as to ensure that real, meaningful sales were happening directly to consumers—instead of primarily to sellers' own downlines. *See, e.g.*, *Webster v. Omnitrition Int'l*, 79 F.3d 776,

782 (9th Cir. 1996). It was not enough to simply have a policy that sales should be at retail; the law has evolved so as to require MLMs to enforce that policy and to demonstrate its effectiveness at ensuring participants were not merely stockpiling inventory and seeking to recoup losses by recruiting new sellers to buy the product from them.

65. These legal developments have prompted two important changes. First, because MLMs must ensure retail sales are occurring, few if any MLMs permit sellers to perform "Wholesale/Resale Work." Certainly, Monat does not. Second, the work undertaken by MLMs to enforce policies as to sales at retail results in them exercising far more control than they might have decades ago.

66. Furthermore, by implementing platforms such as Monat's Market Partner login platform, Monat can better oversee Market Partners in their work to ensure they are not engaging in activities that could run afoul of anti-pyramid scheme laws. Monat can oversee all retail sales, given the vast majority occur on its website and on public social media pages. While this control may protect Market Partners from being a victim of one kind of legal violation, they also remove much of the discretion that other independent MLM contractors had.

**f. Monat's Modern E-Commerce Business Is Unlike Past and Present Direct Sales Companies.**

67. The Direct Sales Exemption and its inclusion in AB 5 was based on the MLM industry's claim that it is needed to ensure the industry can continue to offer people the opportunity to create and run their own businesses. Some MLM businesses do run operations that are predominately based around in-person sales, promoting home parties and sales at community events, like Parent Teacher Association meetings or similar. Some do not allow consumers to buy products via a company website or they utilize pricing and purchasing policies that give the seller more control. In the primarily face-to-face, in-person sales context, the direct line between a person's effort and a



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

closed sale may still be one that can be drawn and may allow for the kind of independent business operations contemplated by the statute.

68. Monat's operations, however, are a stark departure. The way in which it operates its platforms, including the Market Partner's login portal, eliminates for the Market Partner nearly all the work associated with operating a business, as compared to MLMs of the past, and of some in the present. At the same time, by removing many of the functions performed by sellers in the past, Market Partners with expertise, skills, or a willingness to invest in certain areas are unlikely to realize a material change in their earnings prospects.

69. For example, the use of Replicated Sites means that skills or investment in inventory management or distribution processes are not necessary, nor will they have a material impact on a Market Partner's outcome. When customers place orders on the Replicated Sites, Monat fulfills them. Unlike some MLMs, both current and historic, as well as in the traditional wholesale context, Market Partners do not need to plan to have Product on hand or collect bulk orders.

70. Similarly, expertise or support in accounting, finance, economics or pricing will not impact a Market Partner's outcome, because Market Partners are not able to alter prices at which the products are sold on their Replicated Sites and must sell them at the rate that Monat has determined will cover Monat's expenses, regardless of whether the Market Partner's compensation is enough to cover the Market Partner's expenses. Monat calculates, collects, and remits sales taxes, and Market Partners do not need nor would benefit from experience in that area. Unlike some MLMs, both current and historic, as well as in the traditional wholesale context, Monat does not give a larger discount if a Market Partner orders a larger amount of product for their customers.

71. Monat also pays the Market Partner's upline and downline and determines any compensation owed to them, and thus, a market Partner does not negotiate or set anyone else's rates of pay. Monat handles the payment interface, and thus Market Partner do not need expertise in electronic payments, data security and privacy, credit

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

card processing regulations, or similar.

**6. The Terms and Conditions in Monat's Policies are Unconscionable, Unfair, and Unlawful.**

72. Monat's policies regarding Market Partners are a tool by Monat to exert control while maximizing Monat's profits. The policies are provided on a take-it-or-leave-it basis, with no opportunity for negotiation. And many Market Partners discover that the arrangement is one in which they will spend extraordinary amounts of time and money promoting the company with little payoff[14]. Indeed, the effect of the policies, when considered in tandem with Monat's other business practices, grossly restricts Market Partner's ability to profit from their work advertising sales, and may cause Market Partner to turn attention to recruiting more Market Partners into a futile business endeavor.

73. Indeed, MLMs like Monat have been criticized for the fact that few of the sellers manage to profit. At least one study concluded that 99% of MLM participants do not earn money; another found that only 25% earned a profit[15]. Monat's numbers are consistent with this low rate of success; Market Partners rarely make any money.

74. While 34% of Market Partners received no commission payment at all in 2023,[16] those Market Partners who *did* receive a commission check did not fare much better. Its own income disclosures show that 91% of Market Partners earned a median income of $26 in 2023—which fell to $0 in 2024.[17] This means that the majority of Market Partners do not make enough commission to cover the cost of the annual $49.99

---

[14] Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/ (last visited Feb. 27, 2025).

[15] *Id.*

[16] *MONAT USA 2023 and 2024* Income Disclosure Statement*, MONAT, https://monatglobal.com/income-disclosure-statement / (last visited Feb. 27, 2025).

[17] *Id.*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

fee to be a Market Partner. Importantly, these earnings do not take into account any expenses incurred by Market Partners. As described throughout, Market Partners foot the bill for business-related purchases, including the initial mandatory Product Pack, samples, marketing materials, and internet and phone bills, inter alia.

75. Moreover, Monat has structured its business operations and policies to benefit from the addition of more Market Partners, while Market Partners lose. Monat benefits when tens of thousands are active on social media, but incurs no other expense unless the Market Partner generates a sale. While Monat benefits from an oversaturation of Market Partners, the individual Market Partners only have more competitors and a harder time setting themselves apart. And nowhere in its policies does Monat promise to limit the number of Market Partners retained in any way.

76. Given that Market Partners must compete with Monat and other Market Partners for retail sales under such oppressive and onerous terms, it is no surprise that the overwhelming majority never receive commission or struggle to break even. But because Market Partners receive commission from the retail sales made by any Market Partners they recruit, those who advance to higher levels through recruiting more Market Partners on average earn more money. Thus, Monat Market Partners have a financial incentive to advertise the opportunity to work with Monat under these unfair, unconscionable, and oppressive terms. Those new Market Partners in turn will buy merchandise from Monat, promote Monat on social media, be subject to the same restrictions on selling as those who recruited them, and like those before them, find profiting from selling to be futile and turn to recruiting.

**C. Monat's Misclassification of Plaintiffs and Market Partners Was Willful.**

77. Monat's decision to misclassify Market Partners as independent contractors was willful and intentional.

78. ***First,*** Monat is a global company. It is a highly sophisticated, large company, whose legal team includes attorneys, both those at the prestigious law firms

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that provide it representation in other matters, as well as those comprising its team of in-house counsel. Both its management and its legal team would be exposed to misclassification laws throughout the United States, including California.

79. ***Second,*** as detailed above, Monat sets forth various rules and policies to Market Partners through materials and communication. Monat knew and intended for Market Partners to conform to these rules and policies and ensured adherence through its own platforms and other instrumentalities.

80. ***Third,*** Monat knows and depends on the Market Partners and even the highest levels of the company understand that the Market Partners play an essential role in Monat's growth and business model. The management team not only understands the essential role the Market Partners play, but know they are classified as independent contractors, as evidenced both by their decision to operate the company as an MLM. Thus, the decision was not a singular decision by a low-level employee, but a conscious and knowing choice endorsed by the highest levels of Monat's management.

81. ***Fourth,*** Monat further knows and understands as an MLM, few workers will make money under a commission structure and repeatedly represent in publicly accessible documents that its Market Partners only get paid if they make a sale, no matter how many hours they work promoting Monat. Indeed, the commission structure represents a significant cost savings over the payment of hourly wages. Monat is aware that it is receiving inexpensive, commission-based work from its Market Partners—it intentionally structured the program in that way.

82. ***Fifth,*** Monat knew that its Market Partners were not engaged in either type of work protected under the Direct Sales Exemption. It also knows that its Market Partners engage primarily in social media marketing on its behalf, and are rarely, if ever, engaging in person sales or hosting parties in others' homes, particularly during and since the COVID pandemic. And it designs platforms, such as the Replicated Sites, to facilitate online sales and marketing.

83. ***Sixth,*** Monat knew the Direct Sales Exemption was enacted years ago, and

there was no guarantee that all MLMs could enjoy its protection. Rather, Monat has been an MLM since 2014 and thus, should have or did know that the classification of MLM workers has for years been one of the most critical legal and policy issues for the industry.

84. For example, in 2018, the Oregon Supreme Court determined that an MLM had misclassified its sales personnel as independent contractors. *See ACN Opportunity, LLC v. Employment Department*, 362 Or. 824 (2018). The decision was based in part on the fact that the statute exempted sales "in the home," and the legislative history indicated that this exemption was narrowly tailored to apply to things like Tupperware parties. Notably, the concurrence made clear that the direct sales laws on the books reflect outdated direct selling practices and may not reach many modern MLMs. It is hard to imagine that Monat would not have learned of a decision by a state supreme court, particularly given the decision's significance to its industry.

**D. Monat's Misclassification of Market Partners and Unfair Business Practices Harm the California Public.**

85. Monat's misclassification of its workers and unfair and unconscionable business model threatens the general public. Because Monat has no incentive to stop these practices, a public injunction is necessary to stop these practices.

**1. Monat Uses Widespread Advertising Practices Directed at the General Public to Recruit New Market Partners**

86. Monat has eschewed traditional recruiting practices in lieu of widespread advertising. Because of how Monat recruits, nearly everyone in the state of California is likely to be targeted for recruiting and engagement in Monat's unfair and unlawful business model.

87. Rather than market job opportunities to job seekers meeting certain criteria, Monat uses its Market Partners to promote the Market Partner recruitment opportunities in the same way they advertise their products. Monat has set up its

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

compensation structure and business model to incentivize Market Partners to turn to recruiting, and those Market Partners, in turn, will promote the opportunity to their customers, as well as their family and friends. Thus, the public does not need to be affirmatively seeking out job opportunities; merely buying a routine consumer good or having a friend or family member working as a Market Partner may subject them to recruiting messaging, and by extension, could lead them to accept Monat's policies and become a Market Partner.

88. Moreover, Monat's reliance on its existing Market Partner network to advertise the Market Partner opportunity is likely to cause the message to reach the general public at large, as its network is enormous, with over 100,000 Market Partners in the U.S.[18] Market Partners need not respect geographic boundaries when advertising the Market Partnering opportunity, and thus, any member of the California public who either personally knows a Monat Market Partner or follows one on social media, regardless of where the Market Partner lives, is likely to receive messages about the Market Partner opportunity.

89. Because of the financial incentives those Market Partners receive, members of the public may sometimes repeatedly and consistently receive advertising about the Market Partner opportunity over weeks or months at a time, and perhaps from multiple Market Partners. Indeed, each newly recruited Market Partner presents the risk of an exponential increase in Market Partners. Market Partners can maintain their status and receive additional compensation based on the sales volume of the downline consultants that they recruited. The more Market Partners recruited into their downline, the more likely it is that they will be able to generate more income.

90. Because Market Partners are incentivized to aggressively recruit new Market Partners, and Monat considers every customer to be a potential Market Partner,

[18] *MONAT USA 2023 and 2024* Income Disclosure Statement*, MONAT, https://monatglobal.com/income-disclosure-statement/ (last visited Feb. 27, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

California's residents are vulnerable to long-term consequences of Monat's rampant misclassification. Notably, Monat is not a selective employer; it requires little in the way of experience or other criteria. The overwhelming majority of adults in the state of California are likely qualified for the job, and millions of people in the state may seek out this opportunity. Indeed, it is estimated that one in every thirteen Americans will participate in an MLM at some point in their lifetimes.[19] This could translate into hundreds of thousands of Californians, if not millions of Californians, who are at risk of being recruited into an illegal and unfair working arrangement.

**2. Monat's Unfair and Unlawful Conduct Harms California in Other Ways.**

91. Beyond recruitment, Monat's misclassification of their Market Partners harms Californians both economically and socially. When Market Partners lose money and accumulate credit card debt, they and their families are harmed by the siphoning away of their uncompensated time and lost money on business expenses. This results in them and their families having fewer resources to invest in legitimate businesses and less time to spend working for real, guaranteed wages. And instead of the opportunity being a "side hustle" that allows them to pay off mortgages or student loan debt, cover costs of childcare, or otherwise advance financially, the loss of money from Market Partners could cause them more economic hardship.

92. This public harm intensifies during periods of crisis. It is well-documented that MLMs, like Monat, profited from greater recruitment of participants during the COVID-19 pandemic.[20] Monat expects the same profit from future crises, such as

[19] Marguerite DeLiema, et al., *AARP Study of Multilevel Marketing: Profiling Participants and their Experiences in Direct Sales*, AARP FOUNDATION (2018), at 13, https://www.aarp.org/content/dam/aarp/aarp_foundation/2018/pdf/AARP%20Foundation%20MLM%20Research%20Study%20Report%2010.8.18.pdf (last visited April 15, 2025).

[20] Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel*

financial recessions, because it recruits new Market Partners under the guise that they will be able to grow their own business with a sustainable income. Monat siphons potential workers away from legitimate opportunities with the promises of building a personal business, when these individuals are under Monat's control, with none of the benefits of proper classification.

93. Monat's practices also harm competitors, such as legitimate companies in the beauty and wellness space, who must and do pay wages and benefits at prevailing market rates to market and sell their products. By misclassifying its workers, and paying them only for certain sales, Monat incurs lower expenses, giving them a competitive advantage over other market participants.

94. The California Legislature specifically considered harms like these in passing AB 5. The legislature recognized "harm to misclassified workers who lose significant workplace protections, the unfairness to employers who must compete with companies that misclassify, and the loss to the state of needed revenue from companies that use misclassification to avoid obligations such as payment of payroll taxes, payment of premiums for workers' compensation, Social Security, unemployment, and disability insurance" and that "the misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." Monat's continued misclassification of California workers will exacerbate all these harms to the California public.

95. Absent an injunction protecting the public from the negative impacts of Defendants' illegal activities, including by and through their officers and/or entities in their control, the California public remains at risk from Monat's deceptive recruitment strategies and the economic and social harms created by their unlawful practices.

///

---

*Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/ (last visited Feb. 27, 2025).

### E. Plaintiffs' Experiences as Monat Market Partners.

#### 1. Plaintiff Rachel Kreifels

96. Plaintiff Kreifels has worked for Monat as a Market Partner since approximately January 2023 to present.

97. When she signed up, Monat required Plaintiff Kreifels to adhere to Monat's rules and policies. Plaintiff Kreifels was not engaged in an independently established trade, occupation, or business selling hair products and had limited sales experience. Monat also required Plaintiff Kreifels to purchase a Product Pack to become a Market Partner.

98. Around the time she signed up, Plaintiff Kreifels created her Market Partner online account. Monat also provided Plaintiff Kreifels with a personalized Monat website URL for her Replicated Website and instructed her to provide it to prospective customers.

99. At no time was Plaintiff Kreifels instructed to focus on in-person sales. As a general matter, Plaintiff Kreifels understood from communications, directives, and practices of Monat that sales efforts were to be predominately online.

100. In the course of her tenure as a Market Partner for Monat, Plaintiff Kreifels predominately marketed Monat products on various social media platforms, including Instagram. To carry out this marketing work, Plaintiff Kreifels performed tasks including:

a) Purchased, studied, and/or tested Monat products;

b) Posted on her own social media pages about Monat products, including brainstorming content, drafting and editing the text, and taking photographs and video recordings for posts, as well as incorporating Monat-approved messaging;

c) Developed and followed up with Monat sales leads;

d) Regularly engaged with customers, and replied to any direct messages from interested customers;

e) Evaluated customers' needs, lifestyle, and goals to put together customized Monat product bundles for their customers;

f) Participated in efforts to recruit, onboard, train, and/or mentor new Market Partners;

g) Attending discussions and/or meetings with upline and downline Market Partners; and

h) Tracked and reported her progress and sales using Monat products.

101. Plaintiff Kreifels performed all these tasks regularly throughout her tenure, typically spending over 40 hours a week, often working for periods of more than five hours. Plaintiff Kreifels performed these activities throughout the day, nearly every day.

102. Plaintiff Kreifels rarely, if ever, sold to customers in-person, and their/n advertising and messaging was done online.

103. Plaintiff Kreifels, like all Market Partners, worked under Monat's pervasive control and direction. Selling Monat products—the main responsibility of Market Partners—is work that is precisely in line with Monat's usual course of business.

104. Plaintiff Kreifels paid out-of-pocket for work-related expenses for which she was not reimbursed by Monat, including :

a) Product Pack upon enrollment;

b) The required annual $49.99 renewal fee each year since signing up;

c) Monat-branded merchandise for social media activity;

a) Travel and lodging to the yearly Monat conference; and

b) Cell phone and internet bills.

105. During Plaintiff Kreifels's tenure, Monat determined the prices at which all products could be sold. She did not have the authority nor the ability to sell or advertise prices for Monat products at a different price. All sales by any customer that Plaintiff Kreifels referred to Monat were made through Monat-controlled platforms.

106. During Plaintiff Kreifels's tenure, including during the last four years, Plaintiff Kreifels was not compensated for her time doing any of the aforementioned



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

activities, nor paid any overtime.

107. The commissions were paid through a pre-loaded debit card. No paystub was provided that identified hours worked, nor were any employment taxes withheld at any time. For some of Plaintiff Kreifels's sales, Monat did not pay commission because the customer returned the products.

**2. Plaintiff Ashley Marin**

108. Plaintiff Marin worked for Monat as a Market Partner from approximately 2021 to present.

109. When she signed up, Monat required Plaintiff Marin to adhere to its rules and policies. Plaintiff Marin was not engaged in an independently established trade, occupation, or business selling hair products and had limited sales experience. Monat also required Plaintiff Marin to purchase a Product Pack to become a Market Partner.

110. Around the time she signed up, Plaintiff Marin created her Market Partner online account. Monat also provided Plaintiff Marin with a personalized Monat website URL for her Replicated Website and instructed her to provide it to prospective customers.

111. At no time was Plaintiff Marin instructed to focus on in-person sales. As a general matter, Plaintiff Marin understood from communications, directives, and practices of Monat that sales efforts were to be predominantly online.

112. In the course of her tenure as a Market Partner for Monat, Plaintiff Marin predominantly marketed Monat products on various social media platforms, including Instagram. To carry out this marketing work, Plaintiff Marin performed tasks including:

a) Purchased, studied, and/or tested Monat products;

b) Posted on her own social media pages about Monat products, including brainstorming content, drafting and editing the text, and taking photographs and video recordings for posts, as well as incorporating Monat-approved messaging;

c) Developed and followed up with Monat sales leads;

d) Regularly engaged with customers and replied to any direct messages from interested customers;

e) Evaluated customers' needs, lifestyle, and goals to put together customized Monat product bundles for their customers;

f) Participated in efforts to recruit, onboard, train, and/or mentor new Market Partners;

g) Attending discussions and/or meetings with upline and downline Market Partners; and

h) Tracked and reported her progress and sales using Monat products.

113. Plaintiff Marin performed all these tasks regularly throughout her tenure, typically spending over 40 hours a week, often working for periods of more than five hours. Plaintiff Marin performed these activities throughout the day, nearly every day.

114. Plaintiff Marin rarely, if ever, sold to customers in-person, and their advertising and messaging was done online.

115. Plaintiff Marin, like all Market Partners, worked under Monat's pervasive control and direction. Selling Monat products—the main responsibility of Market Partners—is work that is precisely in line with Monat's usual course of business.

116. Plaintiff Marin paid out-of-pocket for work-related expenses for which she was not reimbursed by Monat including:

a) Product Pack upon enrollment;

b) The required annual $49.99 renewal fee each year since signing up;

c) Monat-branded merchandise for social media activity;

d) Cell phone and internet bills.

117. During Plaintiff Marin's tenure, Monat determined the prices at which all products could be sold. She did not have the authority nor the ability to sell or advertise prices for Monat products at a different price. All sales by any customer that Plaintiff Marin referred to Monat were made through Monat-controlled platforms.

118. During Plaintiff Marin's tenure, including during the last four years,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiff Marin was not compensated for her time doing any of the aforementioned activities, nor paid any overtime.

119. The commissions were paid via direct deposit. No paystub was provided that identified hours worked, nor were any employment taxes withheld at any time. For some of Plaintiff Marin's sales, Monat did not pay commission because the customer returned the products.

## V. CLASS ALLEGATIONS

120. Plaintiffs incorporate and reallege the above paragraphs.

121. Plaintiffs bring this action on their behalf, as well as on behalf of each and all other persons similarly situated, and thus seek class certification under California Code of Civil Procedure section 382.

122. All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

123. Plaintiffs' proposed class consists of and is defined as follows:

> All current and former individuals classified as independent contractors, who worked as Market Partners or in similar positions, and resided in the State of California during the applicable statutes of limitations through the date a class is certified.

124. Plaintiffs also allege the following subclass:

> The Above-Standard Minimum Wage Subclass
>
> All current and former individuals classified as independent contractors, who worked as Market Partners or in similar positions, and resided in California cities or counties with a minimum wage rate greater than the California minimum wage during the applicable statutes of limitations through the date a class is certified. This subclass includes, but is not limited to, residents of Los Angeles (City and County), San Francisco, San Diego, Oakland, and San Jose.

125. Members of the Class will hereinafter be referred to as "Class Members." Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

based on further investigation, discovery, and specific theories of liability.

126. ***Ascertainable and Numerous.*** The Class is ascertainable and numerous, such that joinder is impractical. The membership of the entire class is unknown to Plaintiffs at this time. However, the class will likely consist of thousands of members, the precise number which is within the knowledge of and can be readily ascertained through Monat's records.

127. ***Community of Interest.*** There is a well-defined community of interest amongst Class Members. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because the Class is both numerous and its membership is geographically widespread across California. A class action will achieve economies of time, effort and expense as compared with separate lawsuits and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class. In addition:

128. ***Predominating Common Questions.*** There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a) Whether Monat misclassified its Market Partners as independent contractors when in fact they were Monat employees;

b) Whether Monat failed to pay Plaintiffs and Class Members the legally mandated minimum wage for all hours worked;

c) Whether Monat failed to timely pay wages due to Plaintiffs and Class Members during their employment;

d) Whether any misclassification by Monat was voluntary and knowing;

e) Whether Monat Market Partners' duties fall within the Direct Sales Exemption to AB 5;

f) Whether Monat controlled the manner and means of the Market

Partners' work;

g) Whether Monat failed to reimburse Market Partners' business expenses;

h) Whether Monat failed to maintain accurate time records for its Market Partners;

i) Whether Monat failed to provide complete and accurate wage statements to its Market Partners;

j) Whether Monat failed to pay Market Partners their wages due at termination; and

k) Whether Monat should be enjoined from continuing the practices described herein.

129. ***Typicality.*** Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs, like all members of the Class, worked as Market Partners for Monat in California, were required to adhere to Monat's policies, and were paid on a commission basis. Furthermore, like all members of the Class, Plaintiffs sustained damages from Monat's wrongful conduct. Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

130. ***Adequacy.*** Plaintiffs will fully and adequately assert and protect the interests of the Class and have retained counsel who are experienced in prosecuting class actions. Plaintiffs acknowledge that they have an obligation to make known to the Court any relationship, conflicts, or differences with any Class Member. Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

## VI. FACTS RELATING TO PLAINTIFFS AS A PRIVATE ATTORNEY GENERALS

131. At all times set forth herein, PAGA was applicable to Plaintiffs' employment by Defendants.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

132. At all times set forth herein, PAGA provides that, notwithstanding any other provision of law, any provision of law under the California Labor Code that provides for a civil penalty, including unpaid wages and premium wages, to be assessed and collected by the California Labor & Workforce Development Agency ("LWDA") for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of the aggrieved employee and other current or former employees pursuant to procedures set forth in California Labor Code § 2699.3.

133. Pursuant to PAGA, a civil action may be brought by an "aggrieved employee," who is any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

134. Plaintiffs were employed by Defendants and the alleged violations were committed against them, and they are, therefore, aggrieved employees. Likewise, the other Market Partners who worked within the relevant time are "aggrieved employees" as defined by California Labor Code § 2699(c) in that they are current or former employees of Defendants and one or more of the alleged violations were committed against them.

135. Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

a) The aggrieved employee shall give written notice (hereinafter "Employee's Notice") to the LWDA and the employer of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

b) The LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee that it does not intend to investigate the alleged violation within sixty-five (65) calendar days of the postmark date of the Employee's Notice. Upon receipt of the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

136. Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for penalties under any provision of PAGA, until such time when all the statutory exhaustion requirements described above have been satisfied. On April 10, 2025 and April 16, 2025, respectively, Plaintiffs Kreifels and Marin provided notices by electronic submission to the LWDA and by certified mail to all Defendants regarding the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations, pursuant to California Labor Code § 2699.3. True and correct copies of those notice letters are attached as **Exhibit A**. The LWDA has not expressly stated that it will intervene or investigate, or otherwise respond regarding Plaintiffs' asserted claims against Defendants.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Failure to Pay Minimum Wages and Liquidated Damages)**

**Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198, 558.1, 1194.2, IWC Wage Order 4-2001**

***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

137. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

138. At all relevant times, California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 have provided that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. California law requires

that employees in California must be paid for all hours worked, up to 40 per week or eight (8) per day, at a regular time rate no less than the mandated minimum wage. Compensable work time is defined by the applicable wage order as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. Tit. 8, § 11070(2)(G) (defining "Hours Worked").

139. As alleged herein, during the relevant time period, Monat maintained and still maintains a policy of requiring employees to work off-the-clock, without compensation. Monat only compensates Market Partners, including Plaintiffs, based on specific sales placed through the Monat website, and does not pay wages for other hours worked. These hours include time spent doing the following, inter alia:

a) training;

b) making and responding to social media posts;

c) purchasing inventory from Monat;

d) communicating with other Monat Market Partners about policies, practices, and sales instructions and guidance;

e) communicating with customers after their purchases were made to handle routine customer service; and

f) handling other responsibilities as needed.

140. Plaintiffs and Class Members performed these activities throughout the day, nearly every day, often in short increments, adding up to one to two hours a day.

141. Monat provided no way for Plaintiffs and Class Members to log time spent and submit to Monat.

142. Monat's failure to pay Plaintiffs and Class Members for work, and failure to pay overtime wages owed, also resulted in failures to pay Plaintiffs and Class Members the minimum wage required, in violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, 1198. In addition, Monat's failure to pay for work and overtime is a violation of various municipal and county codes across the state.

143. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for minimum wage violations. *See* Cal. Lab. Code § 558.1. Defendants MONAT GLOBAL CORP.; RAYNER URDANETA, LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to pay Plaintiffs and other aggrieved employees the minimum wage, and all Defendants are liable for causing this violation under § 558.1.

144. As such, pursuant to California Labor Code § 1194.2, Plaintiffs and Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## SECOND CAUSE OF ACTION

**(Failure to Pay Overtime Wages and Liquidated Damages)**
**Cal. Lab. Code §§ 510, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001**
**Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive**

145. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

146. California Labor Code § 510 and Wage Order No. 4-2001 require employers to pay no less than one and one-half times the regular rate of pay of the employee for hours worked in excess of eight (8) hours in one workday, for hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh day of work in any one workweek, and to pay no less than twice the regular rate of pay of the employee for hours worked in excess of twelve (12) hours in one workday and for any work in excess of eight (8) hours on any seventh day of a workweek. During the relevant time period, Plaintiffs and other aggrieved employees worked over 8 hours in a day and/or 40 hours in a week without overtime compensation because Monat failed to pay them for their work duties, as described above. This was, in turn, due to Monat's unlawful misclassification of Market Partners as independent

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

contractors rather than as employees. On occasions when Plaintiffs and other aggrieved employees had already worked eight hours in one day (performing all their work off-the-clock), Monat failed to pay them any overtime compensation due. Therefore, Plaintiffs and the other aggrieved employees were entitled to receive overtime compensation from Monat that Monat failed to pay, violating Labor Code § 510 and Wage Order No. 4-2001. In addition, Monat's failure to pay overtime is a violation of various municipal and county codes across the state, including, but not limited to City of Los Angeles Municipal Code Art. 7; County of Los Angeles Code § 8.100.040, *et seq.*; and San Francisco Cal. Code 12R.

147. California Labor Code section 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for overtime wage violations. *See* Cal. Lab. Code § 558.1. Defendants MONAT GLOBAL CORP.; RAYNER URDANETA; LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to pay Plaintiffs and other aggrieved employees overtime wages, and all Defendants are liable for causing this violation under § 558.1.

148. As such, pursuant to California Labor Code § 1194.2, Plaintiffs and Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Pursuant to § 558(a), Plaintiffs and Class Members are also entitled to recover unpaid wages and statutory damages in the amount of $50 for any initial violation per employee for each pay period and $100 for each subsequent violation per employee for each pay period and interest pursuant to § 218.6.

## THIRD CAUSE OF ACTION

**(Failure to Provide Rest Periods or Rest Break Premium Wages)**

**Cal. Lab. Code §§ 226.7, 558.1, IWC Wage Order 4-2001**

***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

149. Plaintiffs reallege and incorporate by reference all preceding allegations as

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

though fully set forth herein.

150. California Labor Code § 226.7 and IWC Wage Order 4-2001 require an employer to authorize or permit an employee to take a rest period of ten net minutes for every four hours worked, or major fraction thereof, and such rest periods must be in the middle of the four-hour period, insofar as practicable. If the employer fails to provide any required rest periods or fails to provide a fully compliant rest break for ten net minutes wherein the employee is fully relieved of all duties and all employer control, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide a legally required and/or fully compliant rest period.

151. Monat failed to provide Plaintiffs and the Class all required and/or fully compliant rest periods, or compensation in lieu thereof. Monat employed policies and procedures that ensured Plaintiffs and the Class would not receive all legally required rest periods as Monat improperly classified Plaintiffs and the Class as independent contractors rather than as employees and did not authorize or permit all required rest periods in strict accordance with the timing requirements of all applicable Wage Orders. Monat similarly employed policies and procedures that rendered rest periods non-compliant with the requirements of California law by, inter alia, failing to relieve Plaintiffs and the Class of all duties and all employer control. Monat further employed policies and procedures ensuring Plaintiffs and the Class never received a rest period premium during employment.

152. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for rest period violations. *See* Cal. Labor Code § 558.1. Defendants MONAT GLOBAL CORP.; RAYNER URDANETA; LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to provide Plaintiffs and the Class all rest periods or compensation in lieu thereof, and all Defendants are liable for causing this violation

under § 558.1.

153. As a result, under California Labor Code § 226.7, Plaintiffs and the Class are entitled to one additional hour's pay for each day a rest break was missed, late, or interrupted, all in an amount according to proof.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Failure to Provide Meal Periods or Meal Premium Wages)**

**Cal. Lab. Code §§ 226.7, 512(a), 1198, 558.1; IWC Wage Order 4-2001**

***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

154. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

155. Under California Labor Code §§ 226.7, 512(a), 1198, and IWC Wage Order 4-2001, Monat was required to provide Plaintiffs and Class Members with one thirty-minute meal break free from all duties for all shifts longer than five (5) hours, and a second thirty-minute meal break free from all duties for all shifts longer than 10 hours and a third thirty-minute meal break free from all duties for all shifts longer than 15 hours. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours, and (2) to record having done so. If the employer fails to properly record a valid meal period, it is presumed no meal period was provided. California Labor Code § 226.7 also requires an employer to pay mandated premiums of an extra hour of wages to any employees who have not been provided with a timely meal or rest break.

156. As alleged herein, Plaintiffs and the Class regularly worked periods of more than five (5), ten and/or fifteen hours in a workday without being provided requisite mandatory, timely, thirty-minute, duty-free meal periods. Monat also failed to pay Plaintiffs and the Class an additional hour of wages at their regular rate for each workday a meal period and/or a legally compliant meal period was not provided.

157. Monat failed to provide Plaintiffs or the other aggrieved employees with

an opportunity to take timely, uninterrupted meal periods of the requisite length, free from employer control. Monat also failed to compensate Plaintiffs and the other aggrieved employees properly for the non-compliant meal periods including, inter alia, missed, short, late, and/or interrupted meal periods. Monat also failed to pay premium wages for the many meals that Plaintiffs and the aggrieved employees were deprived of. Indeed, Monat did not provide any meal breaks or premium compensation for missed breaks to Plaintiffs or other aggrieved employees, since Monat improperly classified its Market Partners as independent contractors who were not entitled to meal breaks.

158. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for meal period violations. *See* Cal. Labor Code § 558.1. Defendants MONAT GLOBAL CORP.; RAYNER URDANETA; LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to provide Plaintiffs and other aggrieved employees all meal periods or compensation in lieu thereof and all Defendants are liable for causing this violation under § 558.1.

159. As a result, under California Labor Code § 226.7, Plaintiffs and the Class are entitled to one additional hour's pay for each day a meal period was missed, late or interrupted, all in an amount according to proof.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Failure to Timely Pay Wages During Employment)**

**Cal. Lab. Code §§ 204, 210(a), 218.6**

***Against Monat Global Corp. and Does 1–50, inclusive***

160. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

161. At all relevant times herein set forth, California Labor Code § 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

162. California Labor Code § 204 also requires that all wages earned for labor more than the normal work period shall be paid no later than the payday for the next regular payroll period.

163. During the relevant period, Monat failed to pay Plaintiffs and the Class, as well as all other aggrieved employees, all wages due to them, including minimum wages, overtime wages, and meal and rest period premium wages, within any time period specified by California Labor Code § 204. Moreover, Monat failed to pay Plaintiffs or other aggrieved employees earned commissions in a timely and complete fashion.

164. As such, pursuant to California Labor Code § 210(a), Plaintiff and Class Members are entitled to recover statutory damages in the amount of $100 for any initial violation per failure to pay each employee and $200 for each subsequent, or willful or intentional violation for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld, and interest pursuant to § 218.6.

**SIXTH CAUSE OF ACTION**

**(Failure to Keep Requisite Payroll Records)**
**Cal. Lab. Code §§ 1174(d), 1174.5**
***Against Monat Global Corp. and Does 1–50, inclusive***

165. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

166. California Labor Code § 1174(d) requires an employer to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the

number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case, shall be kept on file for not less than two years.

167. At all times herein set forth, California Labor Code § 1174.5 has imposed a civil penalty of $500 per aggrieved employee for each willful failure "to maintain . . . accurate and complete records required by subdivision (d) of Section 1174[.]"

168. Monat has intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily and the wages paid to Plaintiffs. For example, any records kept by Monat did not include the hours worked off-the-clock, the premium wages owed, and for missed and non-compliant meal and rest breaks.

169. Plaintiffs have been injured by Monat's intentional and willful violation of California Labor Code § 1174(d) because they were denied both their legal right and protected interest in having available, accurate, and complete payroll records pursuant to § 1174(d).

## SEVENTH CAUSE OF ACTION

**(Failure to Provide Timely and Accurate Wage Statements)**
**Cal. Lab. Code §§ 226(a), 1198, 226.3, 558.1, 226(e)**

***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

170. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

171. At all relevant times herein set forth, California Labor Code § 226(a) provides that, at the time of each payment of wages, the employer must provide each employee with an itemized statement showing gross wages earned, total hours worked, all deductions taken, net wages earned, the inclusive dates for which the employee is being paid, the employee's name and last four digits of their social security number, the name and address of the legal entity that is the employer, and all applicable hourly rates

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

in effect during the pay period and all hours worked at each rate.

172. California Labor Code § 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.

173. At all times herein set forth, California Labor Code § 226.3 has imposed a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation of § 226(a), and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation.

174. As alleged herein, Monat knowingly and willfully failed to provide Plaintiffs and the Class with proper, itemized wage statements. Wage statements provided to Plaintiffs and the Class did not show total/actual hours worked and all applicable hourly rates in effect during the pay period, and all hours worked at each rate. The wage statements provided to Plaintiffs and the Class failed to reflect all time spent in training, making and responding to social media posts, making business expenditures by stocking their own Monat inventory, and communicating with other Monat Market Partners about policies, practices, and sales instructions and guidance. Monat's refusal to properly record this time, and to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiffs and the Class suffered injury because they were not paid for all hours worked.

175. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for wage statement violations. *See* Cal. Labor Code § 558.1. Defendants MONAT GLOBAL CORP.; RAYNER URDANETA; LUIS URDANETA; LU URDANETA;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to provide Plaintiffs and the Class accurate wage statements and all Defendants are liable for causing this violation under § 558.1.

176. Pursuant to California Labor Code § 226(e), Plaintiffs and the Class are entitled to a penalty in the amount of fifty dollars ($50) for the initial pay period in which a violation occurred, and a penalty of one-hundred dollars ($100) for each violation in a subsequent pay period, up to an aggregate penalty of four-thousand dollars ($4,000), as well as costs of suit and attorneys' fees, all in an amount according to proof.

## EIGHTH CAUSE OF ACTION

**(Failure to Reimburse Business Expenses)**
**Cal. Lab. Code §§ 450, 2802, 558.1; IWC Wage Order 4-2001**

***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

177. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

178. At all times herein set forth, California Labor Code § 2802 has provided and provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of § 2802 is to prevent employers from passing off their cost of doing business and operating expenses onto their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order 4-2001, ¶ 9(B) provides that: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." Monat's conduct, in misclassifying their Market Partners as independent contractors and failing to reimburse them for expenses Market Partners paid that should have been borne by their employer,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

constitutes a violation of California Labor Code §§ 450 and 2802.

179. Monat violates California Labor Code § 2802 by having failed, and failing, to reimburse Plaintiffs and the Class for their business-related expenses. Monat charged Plaintiffs and the Class at least $99 by requiring Market Partners to purchase a Product Pack to open their Market Partner account, which Monat did not reimburse. And during the relevant period, Monat required that Plaintiffs and the Class use their own personal cellular phones and/or cellular phone data to carry out Monat's business operations but failed to reimburse them for the full costs of their work-related cellular phone expenses. For example, Plaintiffs and the Class were required to use a personal cellular phone to make social media posts and communicate with customers and their upline. Plaintiffs and the Class also incurred expenses associated with maintaining a home internet connection. Monat did not reimburse Market Partners for these expenses.

180. Monat's company-wide policy and/or practice of passing on their operating costs to Plaintiffs and the Class violates California Labor Code § 2802. At all times described herein, Monat has acted willfully and deliberately with oppression, fraud, and malice to unlawfully deprive their employees of the employees' own personal resources in furtherance of Monat's profits.

181. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for failure to reimburse business expenses. *See* Cal. Labor Code § 558.1. Defendants A MONAT GLOBAL CORP.; RAYNER URDANETA; LUIS URDANETA; LU URDANETA; FRANCISCO JAVIER URDANETA; MARJORIE MUNOZ; CARLA HERNANDEZ; and DOES 1–50, inclusive, failed to reimburse business expenses to Plaintiffs and the Class and all Defendants are liable for causing this violation under § 558.1.

182. As a result of Monat's failure to reimburse Plaintiffs and the Class for all business-related expenses, pursuant to California Labor Code § 2802, Plaintiffs and the Class are entitled to recover unreimbursed business expenses, plus attorneys' fees and costs, in an amount according to proof.

## NINTH CAUSE OF ACTION

**(Unfair Competition)**
**Bus. & Prof. Code § 17200 *et seq.***
***Against Monat Global Corp. and Does 1–50, inclusive***

183. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

184. From a date unknown to Plaintiffs and continuing to the present, Monat has and continues to engage in business acts or practices that constitute unfair competition as defined in the Unfair Competition Law, Business and Professions Code sections 17200 *et seq.*, in that such business acts and practices are unlawful and unfair within the meaning of that statute.

***Violation of the Unlawful Prong of the Unfair Competition Law***

185. Monat has violated Section 17200's prohibition on unlawful conduct through the following violations:

a) Failing to pay minimum wages, as set forth in the First Cause of Action;

b) Failing to pay overtime wages, as set forth in the Second Cause of Action;

c) Denying rest periods and/or failing to pay rest break premium wages, as set forth in the Third Cause of Action;

d) Failing to provide meal periods and/or pay associated premium wages, as set forth in the Fourth Cause of Action;

e) Failing to timely pay wages during employment, as set forth in the Fifth Cause of Action;

f) Failing to keep requisite payroll records, as set forth in the Sixth Cause of Action;

g) Failing to provide timely and accurate wage statements, as set forth in the Seventh Cause of Action; and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

h) Failing to reimburse business expenses, as set forth in the Eighth Cause of Action.

186. The foregoing unlawful conduct of Monat alleged herein constitutes unfair competition within the meaning of California Business and Professions Code sections 17200 *et seq.*

***Violation of the Unfair Prong of the Unfair Competition Law***

187. Monat has violated Section 17200's prohibition on unfair conduct by engaging in each of the foregoing unlawful acts.

188. Furthermore, as set forth in *supra* Section IV.B, Monat has violated section 17200's prohibition on unfair conduct by unfairly and unconscionably structuring its policies and business activities in a way that does not create meaningful opportunities for Market Partners to earn a fair wage and/or commission for their work. Monat used its superior bargaining power, superior market power, and take-it-or-leave-it policies to prevent Market Partners from exercising discretion and accessing tools and resources needed to market the Products effectively and competitively to generate profits. And Monat further undermined Market Partners' ability to earn compensation by engaging in activities in competition with the Market Partners, by, for example, precluding Market Partners from selling with any other company. By denying Market Partners meaningful opportunities to earn fair commission, Monat also unfairly incentivized Market Partners to divert time and attention away from marketing the sale of products to retail customers to marketing the opportunity to become a Market Partner to unsuspecting members of the California public. So long as Defendants continue these unfair practices, the California public remains at risk of being recruited into Monat and similarly harmed.

189. Monat's unfair acts were in contravention of public policy. California public policy encourages the proper classification of workers to ensure that workers are fairly compensated and provided the full benefits and protections of employment, competitors are operating in a fair and honest marketplace, and the state is not deprived

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

of tax revenue.

190. Monat's unfair acts were immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Class and the general public. Monat knowingly and willfully classified the Market Partners as independent contractors. And it knowingly and willfully structured unfair and unconscionable policies that did not provide for meaningful opportunities to earn compensation, while engaging in business activities that would further frustrate Market Partners' efforts to earn compensation.

191. The impact on the Class and general public is not outweighed by any countervailing benefits. To the extent any benefits inured to Plaintiffs, the Class, and the general public, those benefits are outweighed by the impact of Defendants' unfair acts. Market Partners, including Plaintiffs, incurred substantial costs in working as Market Partners, and were not paid appropriately and fairly for their time and efforts. They could have chosen other opportunities or invested that time and money into other legitimate and fairly paying endeavors.

192. As a result of Monat's unfair competition as alleged herein, Plaintiffs and the Class have suffered injury in fact and lost money or property, as described in more detail above. Pursuant to California Business and Professions Code sections 17200, *et seq.*, Plaintiffs and the Class are entitled to restitution of all wages and other monies rightfully belonging to them that Monat failed to pay and wrongfully retained by means of its unlawful and unfair business practices, and/or all other equitable remedies that may be available.

193. To prevent Monat from continuing to prey on the California public through their misclassification of their Market Partners, and recruitment of new Market Partners under these false pretenses, Plaintiffs and the Class also seek a public injunction against Defendants enjoining Monat, and any and all persons acting in concert with them, from engaging in each of the California Labor Code violations set forth herein and from recruiting new Market Partners or authorizing others to recruit new Market Partners, under a misclassified status, including making representations about that status and the

commission-based compensation structure.

**TENTH CAUSE OF ACTION**

**(Violation of Cal. Lab. Code §§ 2698-2699.8 and 226.8)**
***Against Monat Global Corp.; Rayner Urdaneta; Luis Urdaneta; Lu Urdaneta; Francisco Javier Urdaneta; Marjorie Munoz; Carla Hernandez; and Does 1–50, inclusive***

194. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

195. PAGA establishes that, notwithstanding any other provision of law, any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the California Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

196. Whenever the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees has discretion to assess a civil penalty, a court in a civil action is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.

197. Plaintiff and the other Market Partners are "aggrieved employees" as defined by California Labor Code § 2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations were committed against them.

198. Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

a) Failing to pay minimum wages, as set forth in the First Cause of Action;

b) Failing to pay overtime wages, as set forth in the Second Cause of Action;

c) Denying rest periods and/or failing to pay rest break premium



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

wages, as set forth in the Third Cause of Action;

d) Failing to provide meal periods and/or pay associated premium wages, as set forth in the Fourth Cause of Action;

e) Failing to timely pay wages during employment, as set forth in the Fifth Cause of Action;

f) Failing to keep requisite payroll records, as set forth in the Sixth Cause of Action;

g) Failing to provide timely and accurate wage statements, as set forth in the Seventh Cause of Action; and

h) Failing to reimburse business expenses, as set forth in the Eighth Cause of Action; and

i) Willfully misclassifying Market Partners as independent contractors, in violation of California Labor Code §§ 226.8 and 2775.

199. Pursuant to PAGA, and in particular California Labor Code §§ 2699(a), 2699.3, and 2699.5, Plaintiffs, acting in the public interest as a private attorney general, seek assessment and collection of civil penalties for Plaintiffs, all other aggrieved employees, and the State of California against Defendants, in fixed amounts for each aggrieved employee for every pay period in which there was a violation, per § 2699(f), in addition to other remedies, for violations of Labor Code sections set forth herein.

200. Pursuant to California Labor Code § 2699(m), civil penalties recovered by aggrieved employees shall be distributed as follows: seventy-five percent (65%) to the LWDA for the enforcement of labor laws and education of employers and employees about their rights and responsibilities and twenty-five (35%) to the aggrieved employees.

Further, and as authorized by the California Labor Code § 2699(k)(1), Plaintiffs seek recovery of their attorneys' fees and costs.

## VIII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs and the Class pray for judgment and relief as follows:

(1) An order certifying that this action may be maintained as a class action,



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

(2) Statutory penalties, civil penalties, and compensatory damages as authorized under the California Labor Code;

(3) Restitution and all other equitable remedies pursuant to California's Unfair Competition Law;

(4) Public Injunctive relief, pursuant to California's Unfair Competition Law, prohibiting Monat, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly, in connection with the management, hiring, or coordination of Market Partners, or the advertising, promotion, or recruitment of new Market Partners, from:

a. Engaging in the California Labor Code violations as alleged herein, including classifying Market Partners as non-employees or independent contractors;

b. Recruiting new Market Partners or authorizing others to recruit new Market Partners, under a misclassified status, including making representations about that status and the commission-based compensation structure.

(5) Punitive damages against the individual officer, director, or managing agent Defendants pursuant to Cal. Civil Code section 3294;

(6) Reasonable attorneys' fees pursuant to the California Labor Code, including sections 226(e) and Code of Civil Procedure section 1021.5;

(7) Costs of this suit per Labor Code section 218.5;

(8) Pre- and post-judgment interest pursuant to Labor Code section 218.6; and

(9) Such other and further relief as the Court may deem just and proper.

## IX. DEMAND FOR TRIAL BY JURY

Plaintiffs and the Class hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

DATED: July 7, 2025

**CLARKSON LAW FIRM, P.C.**

By: */s/ Glenn A. Danas*
Kristen G. Simplicio
Glenn A. Danas
Maksim Gorbunov
Cody Laux

*Attorneys for Plaintiff and Putative Class*



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265